IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph M. Massi, Sr.            :
                                :
          v.                    :  No. 1635 C.D. 2017
                                :  Argued:  June 7, 2018
City of Chester Aggregated Pension   :
Board and City of Chester,      :
                    Appellants  :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED:  July 17, 2018


          The City of Chester Aggregated Pension Board (Pension Board) and
the City of Chester (City) (together, Appellants) appeal from an order of the Court
of Common Pleas of Delaware County (trial court) finding Joseph M. Massi, Sr.
(Massi) proved that he suffered a permanent and total disability during the course
of his duties as a police officer with the City on February 6, 2014, and awarding
him a service-connected disability pension.  For the reasons that follow, we
reverse.

**I.**

The City's Police Pension Ordinance (Ordinance), codified in Article 143 of the City's Administrative Code, provides that police officers are eligible to receive a normal age/service retirement benefit, as follows:

> A member who was first hired by the City on or after January 1, 1988, and who has served continuously for a period of twenty-five years and has reached the age of fifty-three years shall be entitled upon application to the [Pension] Board to retire and to receive a pension until death which shall be fifty percent (50%) of the average annual salary of such member which he or she received during the last three years of service immediately preceding retirement.

Ordinance Article 143.03(b)(1) (Reproduced Record (R.R.) at 37a.)

In addition, Article 143.03(f) of the Ordinance codifies when an officer may be eligible for service-connected disability benefits:

> Beginning January 1, 1982, any police officer who becomes permanently and totally disabled as a result of a disability incurred while in the actual performance of his or her duty and who, by reason thereof, is unable to perform his or her duties as a member of the police force shall be entitled upon application to the [Pension] Board to retire and to receive a monthly pension until death or reinstatement. Such pension shall be in an amount equal to one hundred percent (100%) of said police officer's average monthly earnings reportable or reported on the police officer's W-2 form in the twelve month period prior to his or her retirement.

(R.R. at 39a.)[1]   Article XXIII(1) of the collective bargaining agreement (CBA) between the City and the Fraternal Order of Police (FOP), Lodge No. 19, effective from January 1, 2012, to December 31, 2016, similarly provides the following with respect to eligibility for service-connected disability benefits:

> Any Police Office [sic] who becomes permanently and totally disabled as a result of a disability incurred while in the actual performance of his or her duty and who, by reason thereof, is unable to perform his or her duties as a member of the police force shall be entitled to retire and to receive a monthly pension.  Such pension shall be in an amount equal to one hundred percent (100%) of said Police Officer's average monthly earnings reportable or reported in the police officer's W-2 Form for the twelve (12) month period prior to his or her retirement.

(R.R. at 83a.)[2]

---

[1] Article 143.03(f) of the Ordinance goes on to state that "[t]he City can claim as an offset from the aforesaid pension the following items:  (1) One hundred percent (100%) of whatever workers' compensation benefit the retired police officer is receiving as a result of his or her service-connected disability. . . ."  (R.R. at 39a.)

[2] Article XXIII(1)(A) of the CBA provides, in pertinent part, that the City can claim the following items as an offset from a service-connected disability pension:

> (1) 100% of whatever workers' compensation benefits the retired Police Officer is receiving as a result of his or her service-connected disability; (2) all earnings from employment which the retired Police Officer did not have at the time he or she retired and/or all earnings in excess of those average earnings from employment which the retired Police Officer had at the time he or she retired and which said Police Officer had regularly received during the twelve (12) month period immediately preceding his or her service-connected disability retirement.

(R.R. at 83a-84a.)

3

The City created the Pension Board to act as trustee of the City's Aggregated Pension Fund, which holds the assets, funds, accounts, claims and liabilities of the City's Police Pension Fund, Paid Fireman's Pension Fund and Officers and Employees Optional Retirement System. Pursuant to the Ordinance, the Pension Board consists of 11 voting members, 6 of which are City officials and 5 of which are nominated by bargaining units whose pensions are under the jurisdiction of the Pension Board. The Pension Board is responsible for making determinations for eligibility for pensions and other pension-related activities for City employees in accordance with the applicable codified pension ordinances.

Of particular importance to this case, Section 143.24 of the Ordinance outlines the City's Deferred Retirement Option Plan (DROP) program, which is available to officers with at least 20 years of service. Under this program, an officer who is otherwise entitled to retire may enter the DROP program, continue to work and be paid by the City while also receiving his pension benefits. These pension benefits are deposited into a trust account which an officer is then entitled to at the time of his actual retirement. To participate in the DROP program, officers "shall make an irrevocable commitment to separate from City service as a police officer and retire upon ceasing participating in the DROP, which they must do no later than five (5) years after entering the DROP." Ordinance Article 124.24(b) (R.R. at 46a.) The Ordinance also provides that "[o]nce entering the DROP, the member continues to be a DROP Participant until separation from City service as a police officer, at which point the member is deemed retired."

4

Ordinance Article 143.24(j) (R.R. at 47a.)[3] With this background in mind, we now turn to the specific facts of this case.

## II.

Massi began working as a City police officer in 1989, rising through the ranks from patrolman to sergeant and finally serving as a captain for his last six years. On July 1, 2009, after 20 years of service, Massi voluntarily applied to enter the City's DROP program; therefore, pursuant to Section 143.24 of the Ordinance, he agreed to separate from his employment as a police officer with the City on or before June 30, 2014.

On September 26, 2013, while he was still a participant in the DROP program, Massi was injured in a physical altercation with a criminal defendant, sustaining herniated discs at the C5-6 and C6-7 levels. Massi continued to work full-time and received medical treatment under his workers' compensation coverage. However, on February 6, 2014, Massi was injured for a second time

---

[3] Article 143.24(m) of the Ordinance provides:

> If a DROP Participant applies for, and the [Pension] Board grants, a service connected disability retirement benefit under Section 143.03(d) or (f), the member shall be terminated from the DROP and separated from service with the City to begin a service connected disability retirement benefit annuity and to receive the DROP Benefit, as provided in Section 143.24(i), with the service-connected disability retirement benefit being based on the compensation and service levels as determined at the DROP Entry Date.

(R.R. at 47a.)

5

when he was involved in a motor vehicle accident while on duty, sustaining additional injuries to his neck and back. As a result of the injuries sustained in these two work-related incidents, Massi underwent a two-level fusion surgery to stabilize his cervical disc herniation on February 26, 2014. The City recognized both injuries as work-related and admitted that the surgery was required as a result of these injuries.

Massi's intention was to recover and obtain another job in law enforcement after his retirement since he was only 50 years of age at the time. Given the nature of the fusion surgery, Massi was informed by his physicians that a medical assessment and determination as to whether he was capable of returning to work as a police officer could not be completed until approximately one year following the surgery, which was beyond the deadline for his retirement under the DROP program. Because he was not medically cleared, Massi was unable to return to work.

On June 30, 2014, while still in the medical assessment period for his injuries and while still receiving workers' compensation benefits, Massi separated from service as a police officer and received his DROP distribution payment from the City. He also became eligible for and began receiving normal retirement benefits. In March 2015, after a full year had passed since his surgery, four physicians consulted by Massi concluded that he was disabled due to his work-related cervical spine injuries. Accordingly, on March 31, 2015, Massi applied to the City for service-connected disability pension benefits pursuant to Article 143.03(f) of the Ordinance and Article XXIII of the CBA. Massi's application

6

letter was not accompanied by any supporting medical evidence or documentation and specifically stated that he was "in the process of obtaining confirmation letters from two physicians confirming [his] disabled status." (R.R. at 93a.)

In a letter to the City dated June 22, 2015, Massi's counsel requested that he be placed on the next available hearing list for disability consideration and indicated that Massi would submit to an independent medical examination (IME). In support of his application, Massi's counsel also sent the Pension Board letters from several physicians outlining his injuries and disability status, including: a letter dated April 9, 2015, from Mark S. Eskander, M.D. (Dr. Eskander) of Delaware Orthopaedic Specialists indicating that he was recommending Massi undergo some additional treatment and that "[a]t this juncture, he is incapable of returning to his employment as a Chester Police Officer" (R.R. at 303a); a letter dated April 20, 2015, from J. Rush Fisher, M.D. (Dr. Fisher) of the Christiana Spine Center, LLC, indicating that causality does exist and that a true disability rating might help with Massi's evaluation; a May 13, 2015 procedure note from Nancy Kim, M.D. (Dr. Kim) of the Christiana Spine Ambulatory Surgery Center, LLC, following Massi's L3-4, L4-5 and L5-S1 discogram of the same date, with positive findings and diffuse annular tearing at the L4-5 and L5-S1 levels; a letter from Dr. Kim dated April 19, 2016, stating her opinion, within a reasonable degree of medical probability, that Massi was disabled and not capable of returning to work as an active policeman; a May 10, 2016 letter from Dr. Eskander, who last saw Massi on April 19, 2016, stating that he believed Massi was disabled from his employment as a City police officer; a June 13, 2016 letter from Dr. Eskander stating that he had reviewed Massi's Functional Capacity Evaluation dated May

7

27, 2016, that Massi was at a sedentary demand and "[h]e cannot return to his former position as a police officer because of these limitations found on the Functional Capacity Evaluation" (R.R. at 312a); a June 17, 2016 letter from William C. Murphy, DO, LPT (Dr. Murphy) of S.M.A.R.T. Rehabilitation indicating that because of Massi's work-related injuries, he is permanently disabled from his job as a City police officer; and a July 11, 2016 letter from Dr. Fisher stating his opinion that Massi was not capable of returning to work as a City police officer and indicating an additional surgical option to correct the nonunion at his C6-7 level.

By letter dated December 22, 2016, the Pension Board notified Massi that his application for a disability pension was denied. The Pension Board concluded that Massi's application was untimely because a completed application was not received prior to his separation date of June 30, 2014. Because Massi was no longer a DROP participant at the time of his application but rather a retiree, the Pension Board concluded that he was ineligible for a service-connected disability pension. Massi then appealed to the trial court which held a *de novo* hearing.

James Chubb (Chubb), a Captain with the City's Police Department and Recording Secretary with FOP Lodge No. 19, testified that there was nothing in Article 143 of the Ordinance that required an officer to apply for service-connected disability benefits prior to his or her leaving the DROP program. (R.R. at 143a.) Chubb testified that the parties' new CBA, effective January 1, 2017, specifically provides that:

8

any such officer who is a member of the DROP must apply for a disability benefit before his or her DROP Participation period ends and if an officer applies for or becomes entitled to a disability benefit while a DROP Participant, that officer's benefit shall not be recalculated but his age and service benefit shall be converted to a disability benefit. An employee who is in the DROP and becomes disabled shall be presumed to be permanently disabled after one year.

(R.R. at 294a.)

Massi testified that he was never informed or aware that as a DROP participant, he needed to notify the City of his intention to seek a service-connected disability pension prior to his retirement date. (R.R. at 156a.) The only procedure that he was aware of with respect to applying for disability was the unwritten policy of submitting supporting documentation from two doctors. Massi testified that he did not submit his application prior to retiring because he fully intended to return to work with another police department after his cervical fusion surgery and, under the Municipal Police Officers' Education & Training Commission (MPOETC) guidelines, he could not do so if he had already submitted an application for disability benefits. Moreover, Massi stated that he was unable to perform MPOETC's annual physical re-certification requirements to be able to return to work as of June 30, 2014. Massi's doctors told him it would be approximately a year after his surgery before they could see any proof of whether the cervical fusion was successful. Massi testified that he underwent a second cervical fusion surgery on November 30, 2016, to repair the first surgical intervention, which did not fuse, and to correct an additional disc failure at C4-5.

9

Nafis Nichols (Nichols), the City's Chief Financial Officer and advisor to the Pension Board, testified that a police officer is supposed to notify the City in writing of his or her intent to retire and what type of pension he or she would like to receive. Nichols stated that if the officer is requesting a disability pension, his or her application must be accompanied by two doctors' notes substantiating the claim that the officer is permanently disabled and cannot perform the duties of a City police officer. Nichols testified that a normal retirement benefit is calculated at 50% of the gross amount an individual earned in the past 52 weeks of service, while a service-connected disability benefit is calculated at 100%. Nichols further testified that the status of the City's Police Pension Fund was grave as it was only funded at less than 20%, with an estimated lifespan of just 17 months. Nichols stated that he was aware of three or four other individuals requesting a similar benefit as Massi. He admitted on cross-examination that the City had not suffered any prejudice as a result of the two-year gap between when Massi first submitted his application and when the City deemed the application complete, as the City was aware that he was attempting to receive a disability pension.

The record was left open following the trial court hearing so the Pension Board could refer Massi for an IME, which was performed by Michael A. Kennedy, M.D., MPH (Dr. Kennedy) on June 28, 2017. After examining Massi and reviewing his medical records, Dr. Kennedy concluded that one year after his initial surgery, Massi had a nonunion that needed stabilization, and that his second cervical fusion surgery on November 30, 2016, was related to his previous work injuries. However, based upon the statements of Dr. Eskander and Dr. Kim, Dr.

10

Kennedy also concluded that Massi was not officially permanently disabled from his work as a City police officer as of his retirement date, July 1, 2014. Dr. Kennedy noted that while there were statements and opinions putting Massi out of work, they were not provided until 2015 and 2016.

As rebuttal, Massi submitted a letter dated September 11, 2017, wherein Dr. Fisher stated his opinion that Massi is certainly disabled and this disability was caused by his work-related injuries. Moreover, with respect to whether Massi was disabled prior to his separation from employment on July 1, 2014, Dr. Fisher opined, "Massi indeed had a well-established pseudoarthrosis, or nonunion, at the C6-7 segment for which he was symptomatic up to and after his separation from the police force." (R.R. at 332a.)

The trial court found that Massi had proven through sufficient competent evidence that he sustained a permanent and total disability on February 6, 2014, while on duty as a police officer, and by reason of this disability, he was unable to perform his duties. This permanent and total disability was sustained while Massi was a participant in the DROP program prior to his date of final separation. The trial court noted there was no evidence of any time restriction contained in the Ordinance, CBA or Pension Board regulations governing when a DROP participant could make a service-connected disability claim. Therefore, the trial court found Massi's March 31, 2015 application was timely, granted his appeal, and ordered that Massi receive a service-connected disability pension under

11

Article 143.03(f) of the Ordinance, subject to any applicable offsets and credits under the CBA. This appeal followed.[4]

## III.

Appellants' main argument is that Massi's application was untimely because it was not submitted prior to his retirement. As Appellants note, Massi was a DROP participant when he sustained his injuries and, according to the Ordinance, a police officer "continues to be a DROP Participant until separation from City service as a police officer, at which point the member is deemed retired." Ordinance Article 143.24(j) (R.R. at 47a.) Given this provision, Massi was no longer a DROP participant but a retiree as of July 1, 2014. The DROP provision of the Ordinance, specifically Article 143.24(m), provides that a DROP participant may apply for and obtain a service-connected disability pension, but does *not* provide that a retiree may make such an application. Because Massi did not submit his application prior to July 1, 2014, while he was still a DROP participant, he is not entitled to a service-connected disability pension under Article 143.24(m) of the Ordinance.

Similarly, he is not entitled to a service-connected disability pension under Article 143.03(f) of the Ordinance or Article XXIII(1) of the CBA because at the time he submitted his application, he was no longer a police officer. While the Ordinance and the CBA do not specifically state that a police officer must

---

[4] Our review is limited to determining whether constitutional rights have been violated and whether the trial court committed an error of law or abuse of discretion. *See* 2 Pa.C.S. § 754.

submit his application prior to his retirement, that is their practical effect. Both provisions state that "any police officer" who becomes permanently and totally disabled while in the actual performance of his duty and who, by reason of that disability, is unable to perform his duties as a City police officer, is entitled to service-connected disability benefits. *See* Ordinance Article 143.03(f) (R.R. at 39a); Article XXIII(1) of the CBA (R.R. at 83a.)

It is undisputed that Massi did not file his application letter with the City until March 2015, nine months after he voluntarily separated from his employment. As such, he was no longer a police officer at the time of his application, but a retiree, and there is nothing in the Ordinance or the CBA which even suggests that a retiree can apply to change his normal retirement benefit to a service-connected disability benefit.

Moreover, both the Ordinance and the CBA provide that an officer must be permanently and totally disabled in order to qualify for service-connected disability benefits. Massi admits that his original application letter did not contain any medical evidence to support his contention that he was permanently and totally disabled. In fact, Massi did not supply the City with supporting medical documentation of a permanent and total disability until two years after he voluntarily retired and approximately one year after the submission of his application. If we were to accept Massi's and the trial court's interpretation of the Ordinance and the CBA, there would be no time limitation upon an officer applying for disability benefits. In effect, a police officer could retire and file an application for service-connected disability benefits 5, 10, 15 years down the line –

13

basically, at any point in time after he was able to obtain medical documentation supporting his contention that he was permanently and totally disabled by reason of his work-related injury – and the officer would then be entitled to disability benefits retroactive to the date of his injury. This is not a reasonable interpretation of Article 143.03(f) of the Ordinance or Article XXIII(1) of the CBA, and the trial court erred in determining otherwise.

Because Massi was no longer a police officer but a retiree at the time he submitted his application, and because he did not submit any proof that he suffered a permanent and total disability until approximately June 2016, two years after his retirement, the trial court erred in determining that he filed a timely application for service-connected disability benefits.[5]

Accordingly, the order of the trial court is reversed.

_____
DAN PELLEGRINI, Senior Judge

---

[5] Given the way in which we decide this case, we need not reach Appellants' additional arguments.

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph M. Massi, Sr.                         :
                                             :
                    v.                       :
                                             : No. 1635 C.D. 2017
City of Chester Aggregated Pension           :
Board and City of Chester,                   :
                    Appellants               :

## **O R D E R**

AND NOW, this 17th day of July, 2018, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby reversed.

_____
DAN PELLEGRINI, Senior Judge